IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN E. PORTER, | ) | CASE NO. 1:18CV104 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN BRIGHAM SLOAN, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Brian Porter ("Petitioner" or "Porter") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Porter is detained at the Lake Eire Correctional Institution, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of three counts of felonious assault and one count of discharging a firearm on or near a prohibited premise, all with firearm and forfeiture specifications. *State v. Porter*, Case No. CR-14-586069-A (Cuyahoga Cty. Common Pleas Ct., filed September 26, 2014). At sentencing, the trial court merged the discharging a firearm count with the other three counts and sentenced Porter to community service on all three base counts and 3 years on each firearm specification, the first two counts to be run consecutively and the third to run concurrently, for a total of 6 years in prison. Doc. 13-1, p. 11.

On January 8, 2018, Porter filed his Petition for Writ of Habeas Corpus setting forth six grounds for relief. Doc. 1, pp. 5-17. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Grounds 1, 4, 5 and 6 are procedurally defaulted and Grounds 2 and 3 fail on the merits.

Thus, the undersigned recommends that Porter's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED in part** and **DENIED in part**.[1]

## I. Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A.  State Court Action

#### 1.  Underlying Facts

The following summary of underlying facts is taken from the opinion of the Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio:[2]

> {¶ 5} In June 2015, Ase, Madeline, Richard, and James Mechling ("James") went to Andy's Hot Spot, a bar located in Cleveland, Ohio. Ase testified that he and his friends went to the bar to shoot pool and sing karaoke. At some point in the evening, Madeline sang a karaoke song in Spanish. When she was finished, she was approached by an individual, later referred to as "Chino," who stated that she "f* * *ed up [by being] with a white guy." Ase, who was dating Madeline, testified that he disregarded Chino's comments to Madeline, but that he and Chino got into an argument several hours later over a game of pool.

> {¶ 6} During last call, Ase learned that James had gotten into an argument with the bartender over James's refusal to throw away a full beer. However, Ase clarified that he did not witness the argument himself. Subsequently, Ase, Madeline, James, and Richard left the bar and got into Ase's vehicle, which was parked in the bar's rear parking lot. Ase testified that Chino and Porter were standing outside when he left the bar. Once seated inside his vehicle, Ase noticed that Chino was walking towards his vehicle. Ase testified that when he got out of his vehicle to confront him, Chino stated that "he just wanted to be friends" and shook Ase's hand. Ase testified that he told Chino to "get away from [him]," and he got back into his vehicle.

---

[1]  The grounds in the Petition that are procedurally defaulted result in a dismissal; the grounds in the petition that are addressed on the merits results in denial.

[2]  Porter has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

{¶ 7} As Madeline drove Ase's vehicle out of the bar's parking lot, Ase heard gunshots. Following the "second or third shot," Ase turned around and observed Porter firing a gun at his vehicle. The bullets struck the side of the vehicle and shattered the rear driver's side window, but no one was injured. Ase testified that he had no prior interactions with Porter, and that no one in his vehicle threatened Porter or had a gun in their possession that evening.

{¶ 8} Ase testified that he immediately called 911 and waited for the police to arrive. James and Richard left the car and returned to Andy's Hot Spot. During that time, James went to the rear parking lot and broke Porter's car window with a brick. When James and Richard returned to Ase's vehicle, which was parked down the street, the police asked them to leave the scene due to their level of intoxication.

{¶ 9} During Ase's direct examination, the prosecutor played a portion of the surveillance video taken from the bar's rear parking lot. The video begins at 1:37:10 a.m.[] and depicts Porter and Chino standing next to Porter's vehicle. At approximately 1:37:38 a.m. video time, Porter is seen opening the passenger's side door of his vehicle to obtain his firearm. At 1:37:47 a.m. video time, Ase's vehicle enters the video screen and slowly drives past Porter and Chino. At approximately 1:37:50 a.m. video time, Porter is seen firing his weapon at Ase's vehicle as it pulls out of the parking lot. Thereafter, the surveillance video captures Porter and Chino "high-fiving" each other before Porter returns his firearm to his vehicle and reenters the bar.

{¶ 10} Richard testified that he went to Andy's Hot Spot with his brother James and his friends Ase and Madeline. He testified that they played pool and sang karaoke. Although he did not witness the altercation, he learned from his friends that there was an issue with Chino after Madeline sang a karaoke song. Richard also testified that he witnessed James get into an argument with the bartender during last call. Richard explained that James was upset that the bartender was making him pour out his beer when other patrons in the bar were still drinking. With respect to the shooting, Richard testified that he was sitting in the rear passenger's side seat when he heard gunshots and saw the car window break. Richard testified that he did not hear any yelling or talking from anyone inside the vehicle and that James did not have a gun in his possession that evening.

{¶ 11} After the shooting, Richard returned to the bar and began knocking on the front door. Richard admitted that he returned to the bar because he was upset and wanted to know why someone shot at their vehicle.

{¶ 12} Madeline testified that she went to Andy's Hot Spot with her boyfriend Ase and his friends, James and Richard, to sing karaoke. She confirmed that Chino made an inappropriate comment to her after she sang karaoke, and that he got into an argument with Ase later that evening over a game of pool.

{¶ 13} Later that evening, Madeline witnessed Chino shaking Ase's hand in the parking lot. However, she did not know the context of their conversation. As she drove Ase's vehicle out of the parking lot, Madeline "heard big pops and felt the glass shatter on [her] arm." Madeline testified that she looked back as she drove away and saw Porter and

Chino. Madeline testified that she did not see Porter interact with anyone in her group that evening. Further, Madeline testified that James did not have a weapon in his possession and that she did not hear anyone threaten Chino or yell from inside the vehicle as they left the bar.

{¶ 14} Officer James Zak ("Officer Zak"), of the Cleveland Police Department, responded to Andy's Hot Spot with his partner, Officer Katherine Reddy ("Officer Reddy"). Officer Zak testified that he was flagged down by the victims, who stated that they were shot at by someone at Andy's Hot Spot. Officer Zak testified that he was provided with a description of the shooter and went to the bar for further investigation. Subsequently, Officer Zak retrieved a firearm from inside Porter's vehicle and discovered two spent shell casings on the ground near Porter's vehicle. Officer Zak testified that Porter was found inside the bar, where he was detained and later transported to police headquarters. Officer Reddy testified that Porter appeared intoxicated based on the smell of alcohol and his slurred speech.

{¶ 15} At the close of the state's case, Porter moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion, and the defense proceeded with its case-in-chief.

{¶ 16} On behalf of the defense, Nicole Ness ("Nicole") testified that she has been going to Andy's Hot Spot for several years and considers Porter a friend. On the night in question, Nicole learned that one of the individuals from Ase's group "got into a heated debate" with the bartender during last call. According to Nicole, one of the individuals from the group stated that he "was carrying heat." Nicole testified that the group was escorted out of the bar by Porter, Toby Cortez ("Toby"), and Jeff Widmer ("Jeff"). Nicole stated that "there was a lot of screaming and yelling going on" and that she was told to stay inside the bar because "they had a gun." Shortly thereafter, Nicole heard gunshots, but did not witness the shooting.

{¶ 17} Mortimer Fort ("Mo") testified that he works as a bartender at Andy's Hot Spot and considers Porter a "brother." At closing time on the night in question, Mo sold James a six pack of "beer to go." However, James began drinking one of the beers inside the bar and Mo asked Porter to take the beer away from James so that he could dump it out. Mo testified that James "felt disrespected" and was "really upset [Mo] took [his] beer considering [he] had just opened it." According to Mo, James stated, in the midst of their argument, that he had a gun. In response, Porter stated, "hey, me too but it doesn't have to go that far." Mo testified that he asked James and his friends to leave, and they were escorted out of the bar by Porter and Toby. Subsequently, Mo heard gunshots outside the bar.

{¶ 18} Mellissa Webber ("Mellissa") testified that she was in the bar on the night in question and witnessed the confrontation between James and Mo when James opened a beer after last call. Mellissa testified that Porter, Jeff, and Toby told James and his friends to leave the bar. As they were being escorted outside, Mellissa heard one of the individuals state that they were "packing." Further, Mellissa stated that she witnessed Jeff open the back door during the confrontation outside and heard someone yell, "shut the

door, they have a gun." Mellissa testified that she did not witness the shooting and did not know whether Porter was drinking that night.

{¶ 19} Jeff testified that he was in the bar on the night in question and also witnessed the argument between James and Mo over an opened beer. Jeff stated that Mo asked him to help escort James and his friends out of the bar. Jeff stated that the group was loud and swearing. According to Jeff, "one of the gentleman made a point to say that he was packing heat, that he had a gun."

{¶ 20} Jeff testified that he escorted James out of the bar and returned back inside. After a few minutes, however, Jeff became concerned that Porter was still outside. Jeff testified that when he opened the back door to check on Porter, he heard Porter yell, "they have a gun." Jeff testified that he simultaneously looked up and observed the individual sitting in the back seat of Ase's vehicle "holding what looked like a gun." At that moment, Jeff shut the back door and "heard the gunfire." After the car "peeled away," Jeff told everyone in the bar to stay inside while he went to make sure Porter was okay. Jeff stated that Porter was "upset and crying." Shortly thereafter, Jeff heard banging on the front door and "something that sounded like gunshots out in front of the bar." At that time, Jeff called 911.

{¶ 21} Porter testified on his own behalf. Porter recalled that on the night in question, Mo asked him to "grab a drink" from James. Porter testified that James was "belligerent" and did not want to give up his drink. Porter testified that he attempted to defuse the situation but that the altercation became heated once James and his friends began to argue with Jeff and Toby. During the argument, James stated that he had a gun, and Porter responded, "guns don't stop bullets and personally, if it's up to me, I'd rather not be involved in it altogether." Porter testified that everyone was "still jawing back and forth," but he managed to move James and his friends out the back door. Porter testified that he followed the James group outside because he wanted to move his car to the front of the bar.

{¶ 22} According to Porter, the James group then began heckling Chino, who was also outside talking on his cell phone. Porter testified that the James group were telling Chino that they were "going to 'F' him up." Porter stated that he told Chino to ignore them, "don't even bother with them, just leave." Subsequently, however, someone from the James group shut the trunk of Ase's vehicle and stated to Porter, "we're going to f* * * you up too." At that time, Porter reached into his vehicle for his gun.

{¶ 23} Porter testified that he was putting the clip into his gun as Madeline began driving the group's car out of the parking lot. Porter described the shooting as follows:

> I remember they had the music loud. They had music loud and they were—the one in the back, James, was still cursing and they pulled up a little slow and he said "I told you I was going to f* * * you up," because he said "I told you I was going to f* * * you up" and that's when I saw something in his hand.

5

As soon as he said he was going to f* * * me up, you know, I went up. You know, went on defense. I was scared from then. I don't know what they pulled out of the back. * * * I felt like I was in danger. * * * Because they threatened me. Not only that, but they also said they were packing.

{¶ 24} Porter testified that he fully cooperated with the police officer's investigation and told them that he fired his weapon because he feared for his life. During his cross-examination, Porter admitted, as evidenced by the surveillance video, that approximately 12 seconds passed between the time he opened his car door to reach for his weapon and the time he pulled the trigger.

*State v. Porter*, 61 N.E.3d 589, 593-596 (Ohio Ct. App. 2016).

## 2.  Procedural History

On June 24, 2014, a Cuyahoga County Grand Jury issued an indictment charging Porter with three counts of felonious assault, R.C. 2903.11(A)(2), and one count of discharge of a firearm on, or near, prohibited premises, R.C. 2923.162(A)(3), all with forfeiture and 1- and 3-year firearm specifications.  Doc. 13-1, pp. 3-6.  Porter, through counsel, pleaded not guilty. Doc. 13-1, p. 7.  The case proceeded to trial and the jury found Porter guilty as charged.  Doc. 13-1, p. 8.

On October 1, 2014, Porter, through trial counsel, moved for new trial asserting "irregularities" about counsel's advice and that there was insufficient evidence to convict him on counts 1-3.  Doc. 13-1, pp. 9-10.  The trial court denied Porter's motion.  Doc. 13-1, p. 211.  At sentencing, the trial court merged the discharging a firearm count with the other three counts and sentenced Porter to community service on all three base counts and 3 years on each firearm specification, the first two counts to be run consecutively and the third to run concurrently, for a total of 6 years in prison.  Doc. 13-1, p. 11.

### B. Direct Appeal

On November 25, 2014, Porter, through new counsel, appealed to the Ohio Court of Appeals.  Doc. 13-1, p. 13.  In his brief, he raised the following assignments of error:

6

1. The trial court's instruction on self-defense wrongly required Mr. Porter to prove that his fear was caused by the actions of the persons he was charged with assaulting when the evidence shows that the fear was caused by their companion, James Mechling, who was with them at all relevant times and who Mr. Porter was defending himself against; in addition, the instruction failed to inform the jury that it should consider self-defense evidence when determining whether the State proved its case beyond a reasonable doubt.

2. The trial court erred when it placed on Mr. Porter the burden of proof of self defense, thereby violating his rights under the Second, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and under Section 1, 4, and 10 of the Ohio Constitution.

3. The trial court erred when it did not instruct the jury that they could draw an inference that James Mechling's testimony would not have supported the State's case from the facts that he was not the alleged victim of a felonious assault count and was not called as a witness on behalf of the State.

4. The trial court committed error when it did not grant Mr. Porter's request for a mistrial when the prosecutor, over objection, was permitted to shift the burden to the defendant by suggesting to the jury that he had the obligation to present evidence that he was factually innocent in violation of his rights to demand and the State's obligation to provide proof beyond a reasonable doubt of every element of the offenses charged.

5. The trial court committed error when it refused to charge the jury on the *mens rea* of recklessness in regard to Count 4, discharge of a firearm on or near prohibited premises.

6. Mr. Porter was denied the effective assistance of counsel when his attorney (1) did not object to the erroneous and prejudicial jury instruction on self-defense that required Mr. Porter to prove that his fear was caused by the actions of the persons he was charged with assaulting when the evidence shows that the fear was caused by their companion, James Mechling, who was with them at all relevant times and who Mr. Porter was defending himself against; (2) did not object to the failure to instruct the jury that they were to consider the evidence of self defense in determining whether the State had met its burden of proof; and (3) did not object to the failure to instruct the jury that they could draw an adverse inference from the State's not calling James Mechling as a witness.

7. Even if errors complained of are not, by themselves, sufficiently prejudicial to warrant reversal, their cumulative effect is.

Doc. 13-1, pp. 22-23.  On March 17, 2016, the Ohio Court of Appeals overruled Porter's assignments of error and affirmed his convictions and sentence.  Doc. 13-1, pp. 74-103.

On April 4, 2016, Porter, through counsel, appealed to the Ohio Supreme Court.  Doc. 13-1, p. 116.  In his memorandum in support of jurisdiction, he raised the following propositions of law:

1. A self-defense instruction must allow the jury to consider the source of a defendant's fear regardless of whether the person causing the fear is a named victim of the underlying criminal offense, and where such an instruction is applicable, it is also applicable to a charge of improper discharge of a firearm.

2: A criminal defendant is denied his right to effective assistance of counsel when his lawyer fails to object to a clearly erroneous jury instruction which effectively eviscerates the defense and when there is a reasonable probability that a proper instruction would have led to a verdict of not guilty.

3. Insofar as R.C. 2901.05(A) requires a defendant to bear the burden of proving self-defense, it violates both the United States Constitution and the Ohio Constitution.

Doc. 13-1, p. 120.  On June 29, 2016, the Ohio Supreme Court declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 13-1, p. 150.  On January 9, 2017, The United States Supreme Court denied Porter's request for certiorari.  Doc. 13-1, p. 220.

### C. Application for Reopening under Ohio App. R. 26(B)

On September 13, 2017, Porter, pro se, filed an Application for Reopening pursuant to App. R. 26(B) with the Ohio Court of Appeals.  Doc. 13-1, p. 151.  He raised the following assignments of error:

1. Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failure to investigate defendant's case, failure to interview potential witnesses, prepare for trial and get evidence for defendant to present at trial.

2. Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failure to object to an incorrect jury instruction on the elements of self defense, specifically, "duty to retreat," as well as failing to instruct them that he was privileged to defend the members of his family.

3. Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failure to renew his Crim.R.29 motion after the defense rested their case and to address the insufficiency of the evidence to support the Appellant's conviction.

Doc. 13-1, pp. 154-161.  On March 23, 2018, the Ohio Court of Appeals denied Porter's application to reopen as untimely.  Doc. 13-1, pp. 176-180.

On April 9, 2018, Porter, pro se, appealed to the Ohio Supreme Court.  Doc. 13-1, p. 181.

In his memorandum in support of jurisdiction, he asserted the following propositions of law:

> I. Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failure to investigate defendant's case, failure to interview potential witnesses, prepare for trial and get evidence for defendant to present at trial.

> II. Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failure to object to an incorrect jury instruction on the elements of self defense, specifically, "duty to retreat," as well as failing to instruct them that he was privileged to defend the members of his family.

> III. Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for failure to renew his Crim.R.29 motion after the defense rested their case and to address the insufficiency of the evidence to support the appellant's conviction.

Doc. 13-1, p. 184.  On June 6, 2018, the Ohio Supreme Court declined jurisdiction to hear the

appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 13-1, p. 207.

### D. Federal Habeas Petition

On January 8, 2018, Porter, pro se, filed his Petition for a Writ of Habeas Corpus.  Doc.

1.  He listed the following grounds for relief:

> **Ground One**: A trial court's self-defense instruction must allow the jury to consider the source of a defendant's fear regardless of whether the person causing the fear is a named victim of the underlying criminal offense, and where such an instruction is applicable, it is also applicable to a charge of improper discharge of a firearm.

> **Ground Two**: A criminal defendant is denied his right to effective assistance of counsel when his lawyer fails to object to a clearly erroneous jury instruction which effectively eviscerates the defense and when there is a reasonable probability that a proper instruction would have led to a verdict of not guilty.

> **Ground Three**: Insofar as R.C. §2901.05(A) requires a defendant to bear the burden of proving self-defense, it violates both the United States Constitution and the Ohio Constitution.

> **Ground Four**: Appellate counsel was ineffective for failing to investigate Petitioner's case, failure to interview potential witnesses, prepare for trial and get evidence to present at trial on the Petitioner's behalf.

9

**Ground Five**: Appellate counsel was ineffective for failing to assign as error, failure to object to an incorrect jury instruction on the elements of self-defense, specifically, "Duty to Retreat," as well as failing to instruct them that he was privileged to defend the members of his family.

**Ground Six**: Appellate counsel was ineffective for failing to assign as error trial counsel's ineffectiveness for Failure to Renew his Ohio Criminal Rule 29 Motion after the defense rested their case and to address the insufficiency of the evidence to support the Petitioner's conviction.

Doc. 1, pp. 5-17.[3]  On September 6, 2018, Respondent filed a Return of Writ (Doc. 13) and, on October 30, 2018, Porter filed a Traverse (Doc. 15).

## II. Standard of Review under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.**  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts

---

[3]  Porter had filed a motion for stay and abeyance while he exhausted Grounds 4-6 (Doc. 3), which Respondent stated it did not oppose (Doc. 7) and which the Court granted.  See Docs. 8, 9.  Upon motion by Porter stating that Grounds 4-6 had been exhausted (Doc. 10), the stay was removed and the case proceeded (Doc. 11).

before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.*  In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d

at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

**Merits Review.**  In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id.*

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a

12

question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent.  *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

### A. Ground 1 is procedurally defaulted

In Ground 1, Porter argues that the trial court's jury instruction on self-defense was incorrect.  Doc. 1, p. 5.  This claim is procedurally defaulted because Porter's trial counsel did not object to the instructions at trial and the Ohio Court of Appeals applied the relevant procedural bar to this claim.

Ohio has a long standing and consistently enforced contemporaneous objection rule that prohibits a court from reviewing a claim on appeal that was not objected to at trial.  *See State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001) ("The waiver rule requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review.").  On direct appeal, the Ohio Court of Appeals noted that Porter's counsel did not object to the trial court's jury instruction and, enforcing the state procedural rule, considered whether the trial court committed plain error and found that it did not.  *Porter*, 61 N.E.3d at 597, 599.  When the Ohio Court of Appeals applied plain error review it invoked the procedural bar of Ohio's contemporaneous-objection rule.  *Awkal v. Mitchell*, 613 F.3d 629, 648-649 (6th Cir. 2010) ("This court has held that [Ohio's] contemporaneous-objection rule is an adequate and independent state ground barring federal habeas review[,]" citing *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Lundren v. Mitchell*, 440 F.3d 754 (6th Cir. 2006)).  A district court may not entertain a habeas petition when the state court applies a procedural bar declining to address a petitioner's claims and the procedural bar "is independent of the federal question and adequate to support the judgment."  *Id*. at 648 (quoting *Coleman*, 501 U.S. at 729).  A state court's plain-error review of a procedurally defaulted claim for failure to object at trial is no exception to this rule.  *Id*. at 648-649.  Thus, Ground 1 is procedurally defaulted.

To overcome his procedural default, Porter must show cause to excuse his procedural default and prejudice, i.e., a reasonable probability that the outcome at trial would have been

different.  *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).  In Ground 2, Porter argues that

trial counsel was ineffective for not objecting at trial.  Ineffectiveness of counsel may serve as

cause to excuse the procedural default of Ground 1.  However, Porter must also show prejudice,

which he does not do for reasons explained by the undersigned when discussing Ground 2, *infra*.

Lastly, Porter does not show actual innocence to overcome the procedural bar.  He does

not show that his is "an extraordinary case, where a constitutional violation has probably resulted

in the conviction of one who is actually innocent."  *Murray*, 477 U.S. at 496.  "A valid claim of

actual innocence requires 'new reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."

*Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).  "The evidence must demonstrate factual

innocence, not mere legal insufficiency."  *Id*. (citing *Bousley v. United States*, 523 U.S. 614, 623

(1998)).  Porter does not provide new, reliable evidence of actual innocence that was not

presented at trial.  Moreover, his claim that he acted in self-defense does not describe factual

innocence, but legal insufficiency.  *See Harvey v. Jones*, 179 Fed. App'x 294, 298-299 (6th Cir.

2006) (collecting cases).  Ground 1 is procedurally defaulted.

**B. Ground 2 fails on the merits**

In Ground 2, Porter argues that trial counsel was ineffective for failing to object to the

self-defense jury instructions at trial.[4]  Doc. 1, p. 6, Doc. 1-1, p. 8.  He asserts that the jury was

not permitted to consider whether his fear was caused by James Mechling, the man Porter alleges

threatened him and which would have supported his self-defense theory.  Doc. 1-1, p. 9; Doc. 15,

p. 10.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs

ineffective assistance of counsel claims.  Under the first prong, a petitioner must show that

---

[4]  In Ground 2 of his brief in support of his Petition, Porter discusses *Martin v. Ohio*, 460 U.S. 228 (1987).  Doc. 1-1, p. 8.  *Martin* is relevant to Ground 3, and the undersigned discusses *Martin* when discussing Ground 3.

counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id*. at 688. To satisfy the second prong, a petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the outcome of the trial would have been different. *Id*. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989) (quoting *Strickland*, 466 U.S. at 691). Upon federal habeas review, there is a double layer of deference applied: to counsel, under *Strickland*, and to the state court of appeals' decision on the merits of that claim, under AEDPA. *Harrington v. Richter*, 562 U.S. 101-102 (2011); *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th Cir. 2017) (citing *Burt v. Titlow*, 571 U.S. 12 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

The Ohio Court of Appeals considered Porter's argument:

{¶ 64} In his sixth assignment of error, Porter argues he was denied effective assistance of counsel when his attorney (1) did not object to the erroneous and prejudicial jury instruction on self-defense that did not allow the jury to consider the actions of James, (2) did not object to the failure to instruct the jury that they were to consider the evidence of self-defense in determining whether the state met its burden of proof, and (3) did not object to the failure to instruct the jury that they could draw an adverse inference from the state not calling James as a witness.

{¶ 65} The test for ineffective assistance of counsel requires a defendant to prove "(1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defendant." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In reviewing a claim of ineffective assistance of counsel, we examine whether counsel's acts or omissions "were outside the wide range of professionally competent assistance" and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690, 104 S.Ct. 2052. To establish the second element, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S.Ct. 2052. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686, 104 S.Ct. 2052.

{¶ 66} Based on our resolution of Porter's first and third assignments of error, we are unable to conclude that defense counsel rendered ineffective assistance of counsel by failing to object to the challenged instructions. As this court has stated, "counsel cannot be deemed ineffective merely for failing to raise a meritless objection." *State v. Primus*, 8th Dist. Cuyahoga No. 96191, 2011-Ohio-5497, 2011 WL 5118417, ¶ 18. Accordingly, Porter's ineffective assistance of counsel claim is without merit.

*Porter*, 61 N.E.2d at 602-603.  The Ohio Court of Appeals recited and applied the correct

*Strickland* standard to Porter's ineffective assistance of counsel claim.  The court discussed and

rejected Porter's claim that the jury instructions were erroneous and prejudiced him:

{¶ 27} In his first assignment of error, Porter argues the trial court's instruction on self-defense was erroneous because it did not allow the jury to consider James's conduct. Porter specifically challenges the following instruction on self-defense:

> In deciding whether the defendant has reasonable grounds to believe and an honest belief that he was in imminent danger of death or great bodily harm, you must put yourselves in the position of the defendant with his characteristics, his knowledge or lack of knowledge and under the circumstances and conditions that surrounded him at that time.

> You must consider the conduct of Ase Rollins and/or Richard Mechling and/or Madeline Santiago and determine if their acts and words caused the defendant reasonably and honestly to believe that he was about to be killed or receive great bodily harm.

{¶ 28} The record reflects that Porter did not object to the above instruction and has forfeited all but plain error on appeal. *State v. Burns*, 8th Dist. Cuyahoga No. 95465, 2011-Ohio-4230, 2011 WL 3716977, ¶ 9.

\*     \*     \*

{¶ 29} Porter concedes that our review is limited to plain error. However, he contends that, "[he] would have been acquitted of the felonious assault charges" had the trial court permitted the jury to consider "the words and actions of James." We disagree.

{¶ 30} It is undisputed that James was central to Porter's theory of self-defense. Throughout trial, the defense maintained that James threatened to cause Porter bodily harm and subsequently brandished a firearm from the backseat of Ase's vehicle as the group drove past Porter and Chino. However, for the reasons that follow, we find the trial court did not commit plain error by excluding James from the self-defense instruction to the jury.

{¶ 31} To establish self-defense, a defendant must prove by a preponderance of the evidence that he (1) was not at fault in creating the situation giving rise to the fight, (2)

had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was through the use of force, and (3) did not violate any duty to retreat or avoid the danger. *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, 2013 WL 658172, ¶ 44, citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus. The elements of self-defense are cumulative, and "'[i]f the defendant fails to prove any one of these elements by a preponderance of the evidence, he has failed to demonstrate that he acted in self-defense.'" *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990), quoting *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

{¶ 32} With respect to Porter's testimony that he believed that he was in imminent danger of death or great bodily harm, we note that the jury was presented with ample testimony that James did not threaten Porter from inside Ase's vehicle, and that he did not have a firearm in his possession that evening. In addition, our review of the surveillance video supports the state's characterization of Porter's acts of preparation in the seconds before the shooting as "calculated." As depicted on the video, Porter is seen reaching for, and subsequently loading, his gun before Ase's vehicle even enters the video screen. Further, we are unable to ignore Porter's conduct immediately after the shooting, which was described as "celebratory" and included him following Ase's vehicle as it pulled away from the scene and his subsequent acts of "high-fiving" Chino and "fist-bumping" Jeff.

{¶ 33} Based on the forgoing evidence, we find a jury could reasonably conclude that Porter's use of deadly force was intentional and not made in response to a bona fide belief that he was in imminent danger of death or great bodily harm.

{¶ 34} Nevertheless, even if we were to determine that Porter proved by a preponderance of the evidence that his use of force was in response to a bona fide belief that he was in imminent danger of death or great bodily harm, we find that Porter has not shown that he did not violate a duty to retreat or avoid danger.

{¶ 35} In this case, the testimony presented at trial indicated that following a verbal confrontation inside the bar, Porter followed the James group to the parking lot and stood next to his vehicle as he spoke to Chino. As stated, the surveillance video then captured Porter retrieve and load his gun before Ase's vehicle even enters the video screen. In our view, the video footage contradicts Porter's testimony that he only went outside to move his vehicle before the bar closed for the evening. Instead, Porter appeared to be waiting next to his vehicle for the James group to leave the premises, while simultaneously preparing for a confrontation.

{¶ 36} Furthermore, Porter admitted at trial that approximately 12 seconds lapsed between the time James allegedly threatened him while standing outside Ase's vehicle and the time Porter pulled the trigger. Viewing this admission in conjunction with the video footage, we agree with the state's remarks during closing arguments that 12 seconds was long enough for Porter to retreat, either by reentering the bar, which was just feet from where he was standing, or by walking away from the situation altogether.

{¶ 37} Generally,

18

courts have found that a defendant is at fault in creating the situation giving rise to the affray or violated a duty to avoid danger or retreat when he chooses to confront the victim, chooses to knowingly go to a place where the victim will be or refuses to move in a direction away from the victim, even when the defendant's action was otherwise completely lawful.

*See State v. Ellis*, 10th Dist. Franklin No. 11AP–939, 2012-Ohio-3586, 2012 WL 3224129, ¶ 15, citing *State v. Hall*, 10th Dist. Franklin No. 04AP–17, 2005-Ohio-335, 2005 WL 225312, *rev'd in part on other grounds in In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174, *reconsideration granted in part*, *State v. Straughn*, 110 Ohio St.3d 1413, 2006-Ohio-3306, 850 N.E.2d 73 (self-defense not available when defendant acknowledged that he did not have to pursue the victim in the parking lot to try to "smooth things out" after an initial argument but, rather, could have left the scene and retreated safely); *State v. Johnson*, 8th Dist. Cuyahoga No. 81814, 2003-Ohio-4180, 2003 WL 21805787, *rev'd on other grounds in State v. Johnson*, 104 Ohio St.3d 250, 2004-Ohio-6399, 819 N.E.2d 272 (defendant's actions contributed to the altercation when he decided to drive into a parking lot in the first place after having a verbal argument with others, as he easily could have avoided any danger by not entering the parking lot and continuing to a safer destination; furthermore, because defendant saw the others enter their cars with baseball bats, driving to an empty parking lot militates against a finding that defendant's actions were entirely blameless); *State v. Mathews*, 3d Dist. Logan No. 8–02–19, 2002-Ohio-6619, 2002 WL 31719034 (self-defense instruction not proper when defendant willingly walked upstairs to complain about loud music and entered into an argument with the victim; the situation could have been avoided if defendant had either not gone upstairs to the apartment in the first place, or if he would have just left the hallway and returned to his own apartment); *State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002-Ohio-415, 2002 WL 126973 (self-defense instruction not warranted when the defendant was at fault for creating the situation, because he purposely left the tavern seeking to locate and engage the victim and then followed the victim to the parking lot when he could have left well enough alone); *State v. Sudberry*, 12th Dist. Butler No. CA2000–11–218, 2001 WL 1402779 (Nov. 13, 2001) (self-defense not available when defendant admitted that he could have retreated from the situation before he attempted to return to the house where he had previously engaged in an altercation with his uncle; instead, defendant was at fault when he tried to go back to the house to get his identification card); *State v. Cole*, 5th Dist. Delaware No. 98 CAC 01001, 1998 WL 429712 (July 2, 1998) (defendant created a situation leading to violence by accompanying his brother onto the victim's property and by approaching the victim; defendant was in a position of safety and could have left with his brother had he chosen to do so but, instead, chose to confront victim thereby creating the very situation which he claims necessitated the use of force); *State v. Bryant*, 12th Dist. Fayette No. CA89–09–019, 1990 WL 111132 (Aug. 6, 1990) (even if the victim fired his weapon first and defendant believed that he was in imminent danger, defendant failed to demonstrate that he was not at fault in creating the situation giving rise to the shooting when he had threatened the victim with a weapon earlier in the day, and then purposely drove to an area with a weapon, stopped, and waited for the victim; defendant could have avoided the situation by refusing to follow the victim after he drove past

defendant's house in the first instance); *State v. Kyle*, 8th Dist. Cuyahoga No. 55353, 1989 WL 50005 (May 11, 1989) (even if the victim was the initial aggressor in the altercation, defendant could have easily avoided the situation by not walking toward an area where he knew the victim would be in order to confront the victim; defendant decided to create and or escalate the conflict by purposely running into the victim).

{¶ 38} Applying the foregoing precedent to the factors of this case, we find the jury could reasonably find that Porter did not comply with his duty to retreat or avoid danger where he (1) chose to enter a parking lot where he knew the James group would be, despite knowing that a confrontation might ensue, and (2) chose to remain in the parking lot despite having the ability to retreat after James first caused Porter fear of imminent bodily harm by verbally threatening to "f* * * him up."

{¶ 39} For these reasons, we are unable to conclude that the court's failure to list James in its self-defense instruction rose to the level of plain error. While the instruction was arguably incomplete, Porter has not demonstrated a reasonable probability that the instruction affected the outcome of trial. In our view, even if James was included in the instruction, a finding of self-defense is simply not appropriate under the facts of this case.

*Id*. at 596-599.

Porter maintains that, had the trial court instructed the jury that it could find that James' actions caused Porter's fear, there is "far more than a reasonable possibility that [he] would have been acquitted." Doc. 1-1, p. 10. As proof he feared James, Porter explains that, as he stood in the parking lot and the victims' car approached him, James, in the victims' car, continued his verbal threats and displayed an object from within the car. Doc. 1-1, p. 10. But the Ohio Court of Appeals reasonably explained that the evidence at trial did not show that Porter met the elements of self-defense even if James' actions were included in the instruction. It detailed uncontroverted evidence that Porter and an acquaintance, Chino, had had words with the victims in the bar and knew that James was said to have had a gun. When the victims left the bar and went out to the parking lot, Porter and Chino also went outside to the parking lot. Porter's explanation that he went outside to move his car was belied by the video footage which did not show him moving his car but rather standing in the parking lot next to his car with Chino appearing to wait for the victims to leave. When the victims allegedly verbally threatened Porter

while in or standing near their car, Porter reached into his car and loaded his gun before the victims' car drove past him *as it exited the parking lot*.  As the victims' car pulled out of the parking lot, Porter shot, twice, into the side of the car and then briefly followed the vehicle on foot as it drove away.  He immediately celebrated by high-fiving Chino and fist-bumping another man standing nearby, placed his gun back in his car, and reentered the bar without having moved his car.

Ohio courts routinely consider the evidence at trial when deciding whether the outcome would have been different had the jury instruction advanced by the defendant been given.  *See, e.g., State v. Wamsley*, 884 N.E.2d 45, 49 (Ohio 2008) ("an appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions."); *Rice v. Moore*, 633 F.Supp.2d 541, 558 (S.D.Ohio 2008) ("A trial court does not err in failing to instruct the jury on self-defense where the evidence is insufficient to support the instruction," citing *State v. Palmer*, 687 N.E.2d 685 (1997); "a reviewing court must evaluate the evidence, 'which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue[,]'" citing R.C. 2901.05 and *State v. Melchior*, 381 N.E.2d 195 (1978)).  Moreover, "[a]n omission, or an incomplete instruction," as was given here, "is less likely to be prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977); *Hardaway v. Withrow*, 305 F.3d 558, 565 (6th Cir. 2002).  Porter does not show that the Ohio Court of Appeals' finding that trial counsel was not ineffective because the instruction given did not affect the outcome at trial "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.

In further support of his assertion that the trial court's jury instructions were erroneous, Porter cites to R.C. §§ 2901.09(B) and 2901.05(B).  Doc. 15, p. 14.  These statutes do not

support Porter's argument because they describe self-defense of a person within his or her home or vehicle.  Porter was not in his home or vehicle when he shot at the victims' car.

Ground 2 fails on the merits

## C. Ground 3 is not cognizable and fails on the merits

In Ground 3, Porter argues that R.C. § 2901.05(A) requires a defendant to bear the burden of proving self-defense and that this violates the Ohio Constitution and the United States Constitution.  Doc. 1 p. 8; Doc. 1-1, p. 11.  He submits that the evolution of Second Amendment jurisprudence counsels a finding that the right to bear arms requires that the state bear the burden to show a defendant was not exercising self-defense.  Doc. 1-1, pp. 13-14.

To the extent Ground 3 challenges the constitutionality of R.C. 2901.05 under the Ohio Constitution, such a claim is not cognizable because it challenges a state statute on the basis that it violates the state constitution.  *See Estelle v. McGuire*, 501 U.S. 62, 68 (1991) ("it is not the province of a federal habeas court to re-examine state-court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

The Ohio Court of Appeals considered Porter's claim that R.C. 2902.05(A) violates the United States Constitution:

{¶ 42} In his second assignment of error, Porter argues R.C. 2901.05(A), which requires the defendant to bear the burden of proof when raising a self-defense claim, is unconstitutional.

{¶ 43} Porter concedes that the United States Supreme Court upheld the constitutionality of R.C. 2901.05(A) in *Martin*, 480 U.S. 228 at 233–234, 107 S.Ct. 1098, 94 L.Ed.2d 267. However, Porter claims a different result is now warranted in light of the ruling in *Dist. of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

{¶ 44} In *Heller*, the court held that the Second Amendment protects an individual's right to possess a firearm in the home for the purpose of self-defense. *Id*. at 635–636, 128 S.Ct. 2783. In doing so, the court recognized that self-defense is a "central component" to the right to bear arms. *Id*. at 599, 128 S.Ct. 2783. Thus, Porter argues that placing the burden

of proof on a person claiming to act in self-defense runs counter to the purpose of the Second Amendment. We disagree.

{¶ 45} While *Heller* recognizes the right to self-defense, "nothing in *Heller* purports to alter the way the states have defined self-defense." *State v. Warmus*, 197 Ohio App.3d 383, 2011-Ohio-5827, 967 N.E.2d 1223, ¶ 47 (8th Dist.). Further, as an inferior court to the United States Supreme Court, we are bound to follow the *Martin* decision and have no authority to overturn it. *State v. Loyed*, 8th Dist. Cuyahoga No. 83075, 2004-Ohio-3961, 2004 WL 1688548, ¶ 33. As such, this court has previously rejected the argument that *Heller* requires a different result. *State v. Betliskey*, 8th Dist. Cuyahoga No. 101330, 2015-Ohio-1821, 2015 WL 2250470; *State v. Hudson*, 8th Dist. Cuyahoga No. 96986, 2012-Ohio-1345, 2012 WL 1067888.

*Porter*, 61 N.E.3d at 600.

Porter concedes that the United States Supreme Court decision *Martin v. Ohio*, 480 U.S. 228 (1987), upheld the constitutionality of R.C. § 2902.05(A).  Doc. 1-1, p. 8; Doc. 15, p. 17. He submits that subsequent Second Amendment jurisprudence "reveal[s] *Martin* to be more obviously wrong now."  Doc. 1-1, p. 13.  But AEDPA mandates that habeas relief is only available when the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  This means that there must be a Supreme Court case that "confront[s] 'the specific question presented by this case.'"  *Woods v. Donald*, 135 S.Ct. 1372, 1377 (2015) (citation omitted).  The Supreme Court case that confronts the specific question presented by Porter in this case is *Martin v. Ohio*.  *Martin* has not been overruled, Porter's list of Second Amendment cases notwithstanding.  The Ohio Court of Appeals followed *Martin* when deciding Porter's case, and so must this Court.  *See White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [the Supreme] Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

Ground 3 fails on the merits.

### D. Grounds 4, 5 and 6 are procedurally defaulted

In Grounds 4, 5 and 6, Porter argues that appellate counsel was ineffective: in Ground 4, because he failed to investigate Porter's case, interview witnesses, prepare for trial, and obtain evidence to present at trial; in Ground 5, because he failed to assign as error the jury instruction of the "duty to retreat" element of self-defense and an instruction that Porter was privileged to defend family members; and, in Ground 6, because he failed to assign as error trial counsel's ineffectiveness for not renewing Porter's Rule 29 Motion after the defense rested and for not addressing the sufficiency of the evidence supporting Porter's convictions.  Doc. 1, pp. 10, 16-17.

Grounds 4, 5 and 6 are procedurally defaulted.  Porter presented these grounds in his Rule 26(B) Application for Reopening, which the Ohio Court of Appeals denied as untimely. Doc. 13-1, pp. 179-180.  When the Ohio Court of Appeals denied Porter's Rule 26(B) Application as untimely, it enforced a regularly applied procedural bar.  *See Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir. 2002) (an Ohio appellate court's rejection of a Rule 26(B) Application as untimely is an adequate and independent state ground on which the state can foreclose review).

For cause to excuse his procedural default, Porter asserts that he was represented by the Ohio Public Defenders Office at trial and throughout his direct appeal to the United States Supreme Court and that he did not have his legal materials with which to file a Rule 26(B) Application within the required time period.  Doc. 15, p. 12.  He does not describe what "legal materials" he was missing that precluded him from filing a timely Rule 26(B) Application.  Lack of access to legal materials, such as transcripts, is not sufficient cause to excuse the procedural default of a Rule 26(B) Application.  *See Rogers v. Warden*, 2011 WL 1771691, at *6 (S.D.Oh. Feb. 8, 2011) (collecting cases holding that lack of transcripts is not sufficient cause to excuse

procedural default of an untimely Rule 26(B) Application).  Moreover, Porter does not state when he received his allegedly missing legal materials.  He states that it was "sometime well after September 20, 2016" that he received any of his legal materials and "sometime after" January 9, 2017, that he received "some" of his legal documents.  Doc. 15, p. 12.  Yet, Porter did not file his Rule 26(B) Application until September 13, 2017, eight months later.  Doc. 13-1, p. 151.  In short, Porter has not alleged sufficient cause to excuse his procedural default.  *See Rogers*, 2011 WL 1771691, at *6 (petitioner's explanation that he did not have his transcripts for one year was not sufficient to establish cause for a late Rule 26(B) Application because the petitioner did not explain why it took him another six months to file his Application).

Furthermore, Porter cannot show prejudice to excuse his procedural default, i.e., that he would have prevailed on his appeal but for appellate counsel's alleged ineffectiveness.  *See Smith v. Robbins*, 528 U.S. 259, 285-286 (2000) (to demonstrate prejudice for appellate counsel's alleged ineffectiveness, the petitioner must show that he would have prevailed on his appeal).  He does not explain why camera footage of events inside the bar would have been relevant, let alone established that the outcome at trial would have been different.  Doc. 1-1, p.16; Doc. 15, p. 20.  What Chino or James was thinking is likewise irrelevant to what Porter thought and whether he met the elements to prove self-defense.  Whether an individual has a privilege under Ohio law to defend members of one's family, as Porter asserts (Doc. 15, p. 21), is irrelevant because Porter has not identified any of his family members who he alleges were present and needed defending.  Porter's disagreement with the "duty to retreat" element of self-defense does not show that he would have prevailed on appeal.  So, too, with respect to counsel's failure to renew a Crim.R. 29 motion after the defense rested.  Finally, Porter's assertion that there was insufficient evidence to find him guilty of felonious assault because he did not cause or attempt to cause physical harm with a deadly weapon (Doc. 15, p. 23) is not persuasive.  The

evidence shows Porter fired two shots from a semi-automatic weapon (Doc. 14-6, pp. 41-43) into the side of a car containing four people.  And, as explained in Ground 1, Porter does not show actual innocence.  Grounds 4, 5 and 6 are procedurally defaulted.

Porter's request in his Traverse for an "evidentiary hearing so that the evidence can be presented in person" is denied.  Doc. 15, p. 24.  Neither 28 U.S.C. § 2254(d) nor § 2254(e)(2) warrant an evidentiary hearing in this case.  *See Cullen*, 563 U.S. at 180-181, 185 (federal habeas review under § 2254 is limited to the record before the state court).

### IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Porter's habeas Petition be **DISMISSED in part** and **DENIED in part** because Grounds 1, 4, 5 and 6 are procedurally defaulted and Grounds 2 and 3 fail on the merits.


Dated: November 9, 2018

*/s/ Kathleen B. Burke*
_____
Kathleen B. Burke
United States Magistrate Judge



### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).